USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 0 3 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AULISTAR MARK, et al.,

          Plaintiffs,

–v–

GAWKER MEDIA LLC, et al.,

          Defendants.

13-cv-4347 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On August 15, 2014, the Court granted Plaintiffs' motion in the above-captioned case for conditional certification and court-authorized notice under § 216(b) of the Fair Labor Standards Act (FLSA). Dkt. No. 66. The parties were ordered to meet and confer about the content and dissemination of the proposed notice. On September 10, 2014, the parties submitted a joint letter describing the remaining disputes regarding the proposed notice, and setting forth each party's position. Dkt. No. 75. The Court resolves those disputes as follows.

## I.   Opt-In Period

Plaintiffs request a 75-day period to send notice to potential plaintiffs and receive opt-in requests. They argue that, as former interns, the potential plaintiffs are "transient and highly mobile" and therefore "special circumstances" warrant a longer period. Defendants counter that the "near universal" notice period in the Second Circuit is 60 days, and that their proposal for a 60-day period is double their original proposal of 30 days.

Defendants are correct that courts in this district have coalesced around a standard 60-day notice period. *See Weng Long Liu v. Rong Shing, Inc.*, No. 12-cv-7136, 2014 WL 1244676, at *3 (S.D.N.Y. Mar. 26, 2014); *Chhab v. Darden Rests., Inc.*, No. 11-cv-8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013). Longer periods may be warranted when all parties

1

consent, or in "special circumstances." *Diaz v. S & H Bondi's Dep't Store*, No. 10-cv-7676 (PGG), 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012). As Plaintiffs have noted, some courts have found such a special circumstances when the potential plaintiffs are part of a group of "transient laborers" who may be more difficult to reach than the average employee. *See, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007) (authorizing nine-month period to notify "transient immigrant day laborers" when defendants did not specifically object); *Fang v. Zhuang*, No. 10-cv-1290 (RRM) (JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (members of class "apt to travel often").

The Court must decide whether an extended period would serve the purpose of the FLSA notice, which is "to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Chhab*, 2013 WL 5308004 at *15. A 60-day period for potential plaintiffs to opt in would accomplish that task here. While former interns are likely to have changed addresses and dispersed throughout the country since their internships, there is no special reason to think that attempts at notice might fail to reach them at their new addresses, in the same way migrant laborers might be unreachable through traditional means. Moreover, the parties have agreed to electronic distribution of the notice via email and two stand-alone websites. See Dkt. No. 75-2 at 5. This form of dissemination alleviates much of the concern that a "highly mobile" population will not receive notice, particularly under the circumstances of this case, where the potential plaintiffs are skilled with electronic media use by the very nature of their former positions.

Plaintiffs attached as Exhibit C to the joint letter regarding notice a transcript from another FLSA intern case in this district wherein the court permitted a 75-day period. See Dkt. No. 75-3. However, in context it appears that electronic dissemination was not contemplated in the case, and the plaintiffs were concerned with the need to re-mail returned notices during the additional 15 days. *Id.* Again, dissemination by email alleviates that concern. A 60-day period is appropriate.

II.     **The Appropriate Time Period**

2

The parties dispute the date when potential plaintiffs' actions "commenced" for the purposes of FLSA's statute of limitations. FLSA carries a limitation period of two years, which is extended to three years of the violation was willful. 29 U.S.C. § 255(a). Ordinarily, the question whether any particular opt-in plaintiff's action is timely is keyed to the date she actually opts in to the lawsuit, not to the filing of the complaint. 29 U.S.C. § 256(b). However, Plaintiffs argue that the statute of limitations for future opt-in plaintiffs should be equitably tolled from December 10, 2013, the day they filed the motion for conditional certification of a FLSA collective action. *See* Dkt. No. 15.

First, Plaintiffs contend that their motion sought tolling, and that the Court granted such relief by virtue of granting the conditional certification motion. Dubious as it is that a court would grant such equitable relief by its silence, the Plaintiffs' reasoning suffers from an even more fundamental problem: while they suggested tolling should apply in the memorandum supporting the motion, *see* Dkt. No. 18 at 23, it did not make this request part of the motion, *see* Dkt. No. 15. The Court's order granting conditional certification did not answer the question whether equitable tolling should apply.

Equitable tolling should be applied "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v. U.S. Immigration & Naturalization Servs.*, 232 F.3d 124, 129 (2d Cir. 2000) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)) (alteration in original). In the Second Circuit, equitable tolling can apply only when a party has "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted). When a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied. *See Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-cv-5651 (AJN), 2013 WL 3466810, at *4 (S.D.N.Y. July 8, 2013). The most common circumstance where equitable tolling might apply to FLSA actions is where the defendant has concealed the existence of a cause of action from the plaintiffs, and even then

only if the plaintiffs had no actual notice of the right to bring an action. *Saunders v. City of New York*, 594 F. Supp. 2d 346, 359 (S.D.N.Y. 2008); *Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012).

The only circumstance justifying tolling advanced by Plaintiffs is the passage of time while the conditional certification motion was pending. As Plaintiffs point out, at least one court has found that "heavy dockets and understandable delays" in ruling on a motion can be grounds for tolling. *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). However, the time delay between the date Plaintiffs filed the motion and its resolution in this case was not "extraordinary," and equitable tolling is available only in extraordinary circumstances. Such tolling should not apply here.

### III. Use of Defendant's Logos

Defendant seeks to include the logos from Gawker Media's component sites on their notice. Defendants argue that using their logos would be "simply gratuitous," and the Court agrees. The list of Gawker's component sites already appears in the proposed notice, and there is little chance that a former intern's understanding of the lawsuit depends on inclusion of the logos. The chance that inclusion of the logos increases any potential plaintiff's awareness of her right to opt in is negligible, and it would impose a cost on Gawker Media insofar as use of its logo against its will could imply endorsement. The Plaintiffs may not use Defendant Gawker Media's logos on the notice.

### IV. Methods of Dissemination

The parties agree that the proposed notice may be disseminated by U.S. Mail, email, and two stand-alone websites that will give potential plaintiffs the ability to download and submit the consent form electronically. The other forms discussed below are disputed.

#### A. Hard-Copy Posting in Defendant's Office

Plaintiff proposes to post hard copies of the notice in Defendant's office. This procedure is common. *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y.

4

2013); *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-cv-322 (CM), 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009). However, the circumstances of this case make clear that posting in Defendant's workspace is unlikely to reach any significant number of potential plaintiffs, and even more unlikely to reach any plaintiffs that will not otherwise receive notice. As Plaintiffs themselves have represented, most of the former interns are no longer with Gawker, and are instead spread throughout the country. The ones who remain at Gawker will be easy to find for the purposes of mail and email notice. Hard-copy postings are unnecessary in this case, and Plaintiffs' request for such postings is denied.

### B. Posting on Defendants' Websites and Weblogs

Plaintiffs want the Court to order Defendants to post notice materials on their websites and blogs. They point to several class-action cases finding dissemination of notice through links on the defendant's website was proper under Rule 23. *See Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-0214 (CM), 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010); *Martin v. Weiner*, No. 06-cv-94, 2007 WL 4232791, at *5 (W.D.N.Y. Nov. 28, 2007) (fairness hearing for proposed settlements).

The cases cited by Plaintiffs are distinguishable. *Jermyn* was a consumer class-action alleging that Best Buy was not honoring its guarantee to match prices; there was a real possibility that potential plaintiffs whose rights would be affected by class certification might not receive notice through other means, and other methods of reaching potential class members could be seriously underinclusive because there was no conceivable way of crafting a targeted list of individuals who might have claims. *See Jermyn*, 2010 WL 5187746, at *2. *Martin*, meanwhile, was a civil rights class action about the handling of Medicaid, food stamps, and public assistance applications, and involved a posting to a government website about a settlement that would bind individuals who did not respond.

In light of the agreed-upon methods of disseminating the FLSA notice at issue here, the Court finds that posting on Defendant's websites and blogs would be overbroad and not likely to materially improve the chances of notice. Unlike the cases cited, this case involves potential

5

plaintiffs who are likely to be reached and identified by other means, and any plaintiffs who cannot be reached will not have their legal rights altered by their inaction. Posting a link on their website extracts a cost from Defendants, and has the potential to appear punitive, while the incremental chance that potential plaintiffs who do not otherwise receive notice would see it and become aware of their rights is small. The court will not order Defendants to post notice on their websites.

### C. Social Media

Plaintiff's final request is to use social media to target potential plaintiffs. They want to use dedicated social media pages entitled "Gawker Intern Lawsuit" or "Gawker Class Action"—names that match the URLs of the websites that the parties agree will be used to provide notice—on sites such as Facebook, LinkedIn, and Twitter.

Defendants argue, first, that there is "no evidence here that any former Gawker intern uses Twitter or could reasonably be expected to receive notice in that way," and second, that creating social media pages would "deprive[] the Court of control over the message delivered to potential collective members." As to the former argument, the Court finds it unrealistic that Defendant's former interns do not maintain social media accounts; the vast majority likely have at least one such account, if not more.[1] As to the latter, the Court exercises control only over the materials prepared and sent by the parties, not over the discussion that takes place by and among potential class members after notice is sent. The Court's inability to control "discussion of the lawsuit" on social media sites, as Defendants put it, is no different from the Court's inability to control two potential plaintiffs' discussions of the lawsuit in person, by telephone, or even on a social media page that could be created by such a person without the parties' intervention. The Court's role is to ensure the fairness and accuracy of the parties' communications with potential

---

[1] The Pew Research Center notes that as of January 2014, 89% of 18- to 29-year-olds use social networking sites. *See* "Social Networking Fact Sheet," The Pew Internet Project, http://www.pewinternet.org/fact-sheets/social-networking-fact-sheet/ (last accessed Oct. 31, 2014).

6

plaintiffs—not to be the arbiter of all discussions not involving the parties that may take place thereafter.

To the extent Plaintiffs propose to use social media to provide potential plaintiffs with notice that mirrors the notice otherwise approved by the Court, that request is granted. Before disseminating any notice by social media, the Plaintiffs shall confer with Defendants over the form and substance of any proposed social media postings, and submit to the court a joint letter describing the postings and any disputes about their contents that the parties cannot resolve themselves. The disputes already settled in this order—for example, the prohibition on the use of Defendant's logos—shall govern any social media notice as well.

### V. Conclusion

For the foregoing reasons, it is ORDERED that: 1) the opt-in period shall be 60 days; 2) equitable tolling shall not apply; 3) Plaintiffs may not use Defendant's logos on their notice; 4) Defendants are not required to post hard-copy notice in their offices; 5) Defendants are not required to post notice on their websites and blogs; and 6) Plaintiffs may send notice via social media sites, subject to the Court's further approval of the form and content of such notice.

This resolves Docket No. 74.

SO ORDERED.

Dated: November 3, 2014
      New York, New York

_____
ALISON J. NATHAN
United States District Judge