IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AULISTAR MARK, et al., etc.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>GAWKER MEDIA LLC and NICK DENTON,<br><br>　　　　　　　Defendants. | Case No.: 13-CV-04347 (AJN) |

### AFFIDAVIT OF SCOTT KIDDER

I, Scott Kidder, hereby depose and state:

1.　I am the Chief Operating Officer at Gawker Media LLC ("Gawker"). I make this declaration on personal knowledge.

2.　A true and correct copy of Timothy Barribeau's "Check View – Rollup Totals" summarizing his contractor pay records is attached hereto at Tab 1.

3.　A true and correct copy of Patrick Frawley's "Check View – Rollup Totals" summarizing his contractor pay records is attached hereto at Tab 2.

4.　A true and correct copy of Aulistar Mark's Internship Policy and Acknowledgement is attached hereto at Tab 3.

5.　True and correct copies of Lily Newman's Contractor Details Form, Direct Deposit Enrollment Form, and W-9 Form are attached hereto at Tab 4.

6.　A true and correct copy of Kwame Opam's offer letter is attached hereto at Tab 5.

7.　A true and correct copy of Lily Newman's "Check View – Rollup Totals" summarizing her contractor pay records is attached hereto at Tab 6.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 13, 2015

_____
Scott Kidder

# Tab 1

CheckView                                                                                           7/14/15, 12:28 PM

## Check View - Rollup Totals

**Name:**  Barribeau, Timothy

**Selected checks**

| Year/Week # | Pay Date   | Period End | Gross  | Net  | Check Number | Co/File # |
|---|---|---|---|---|---|---|
| 2013 - 04 - 1 | 01/16/2013 | 12/31/2012 | 100.00 | 0.00 | 00040047 | 79H/001164 |
| 2012 - 50 - 1 | 12/13/2012 | 11/30/2012 | 240.00 | 0.00 | 00500025 | 79H/001164 |
| 2012 - 46 - 1 | 11/12/2012 | 09/30/2012 | 230.00 | 0.00 | 00460028 | 79H/001164 |
| 2012 - 41 - 1 | 10/11/2012 | 09/30/2012 | 160.00 | 0.00 | 00410021 | 79H/001164 |
| 2012 - 37 - 1 | 09/12/2012 | 08/31/2012 | 250.00 | 0.00 | 00370026 | 79H/001164 |
| 2012 - 32 - 1 | 08/10/2012 | 07/31/2012 | 260.00 | 0.00 | 00320023 | 79H/001164 |
| 2012 - 28 - 1 | 07/12/2012 | 06/30/2012 | 200.00 | 0.00 | 00280023 | 79H/001164 |
| 2012 - 23 - 1 | 06/11/2012 | 05/31/2012 | 400.00 | 0.00 | 00230024 | 79H/001164 |
| 2012 - 19 - 1 | 05/10/2012 | 04/30/2012 | 340.00 | 0.00 | 00190025 | 79H/001164 |
| 2012 - 15 - 1 | 04/11/2012 | 03/31/2012 | 300.00 | 0.00 | 00150021 | 79H/001164 |
| 2012 - 11 - 1 | 03/12/2012 | 02/29/2012 | 550.00 | 0.00 | 00110022 | 79H/001164 |
| 2012 - 06 - 1 | 02/10/2012 | 01/31/2012 | 260.00 | 0.00 | 00060023 | 79H/001164 |

### Earnings Statement Summary

| Earnings | Code | Field # | Hours | Amount |
|---|---|---|---|---|
| Regular  |      |         |       | 3,290.00 |
| **Gross Pay** |  |     |       | **3,290.00** |

| Deductions | Statutory |   | | Amount |
|---|---|---|---|---|
|            | Other     |   | | Amount |
|            | X - Checking 1 | | | 3,290.00 |
| **Net Pay** |          |   | |  **0.00** |

| Memos | Code | | | Amount |
|---|---|---|---|---|

https://payexag.adp.com/eXperts/CheckViewRollupPrintDetail.do?hideCheckList=false&fromPersonPage=false                Page 1 of 2

# Tab 2

CheckView                                                                                                          7/14/15, 12:30 PM

## Check View - Rollup Totals

Name:   Frawley, Patrick

### Selected checks

| Year/Week # | Pay Date   | Period End | Gross    | Net      | Check Number | Co/File #  |
|-------------|------------|------------|----------|----------|--------------|------------|
| 2012 - 23 - 1 | 06/11/2012 | 05/31/2012 | 1,475.00 | 1,475.00 | 00000000     | 79H/001321 |
| 2012 - 19 - 1 | 05/10/2012 | 04/30/2012 | 825.00   | 0.00     | 00190021     | 79H/001321 |
| 2012 - 15 - 1 | 04/11/2012 | 03/31/2012 | 275.00   | 0.00     | 00150017     | 79H/001321 |
| 2012 - 11 - 1 | 03/12/2012 | 02/29/2012 | 2,000.00 | 0.00     | 00110019     | 79H/001321 |
| 2012 - 06 - 1 | 02/10/2012 | 01/31/2012 | 1,500.00 | 1,500.00 | 64483203     | 79H/001321 |

### Earnings Statement Summary

| Earnings | Code | Field # | Hours | Amount |
|---|---|---|---|---|
| Regular  |      |         |       | 6,075.00 |
| **Gross Pay** |  |         |       | **6,075.00** |

| Deductions | Statutory |  | Amount |
|---|---|---|---|
|   |   |   |   |
|   | Other |  | Amount |
|   | X - Checking 1 |  | 3,100.00 |
| **Net Pay** |  |  | **2,975.00** |

| Memos | Code |  | Amount |
|---|---|---|---|

https://payexag.adp.com/eXperts/CheckViewRollupPrintDetail.do?hideCheckList=false&fromPersonPage=false                Page 1 of 1

# Tab 3



## Internship Policy and Acknowledgement

Intern Name: _Aulistar Mark_
Department: _____
Supervisor: _Stephen Totilo_
Start Date: _May 24th 2010_     End Date: _Aug. 20th 2010_

**Internship Guidelines:**

- I am over 18 years of age.
- I understand that as an intern I am not an employee of the Company and will not receive compensation or benefits of any kind from Company.
- While I am welcome to apply for open job positions, I understand I am not entitled to employment at the conclusion of my Internship.
- During my internship, I understand I will be required to abide by company policies at the office and while on assignment.
- I understand that I will be supervised and my supervisor will give me periodic reviews and evaluations in writing or verbally.
- I understand that all business transactions and information I may learn of during my internship are to be considered confidential and must not be disclosed to anyone outside the Company unless I receive express permission from my supervisor.
- I agree to release and discharge Gawker Media LLC, its parent, subsidiaries and affiliated companies and each of their directors, officers, employees and agents, of and from all liabilities, claims, demands, actions and causes of action of any kind arising out of or relations to all losses, damages or injuries of any kind sustained or incurred by me during my internship with Gawker Media.
- To the fullest extent permitted by law, by agreeing to the terms of this Internship Policy, I waive any right to commence, be a party to, or be an actual or putative class member of any class or collective action arising out of or relating to my Internship with Gawker Media LLC or its affiliated companies.

I have read and understand the preceding internship guidelines.

_[signature]_                               _5/26/10_
Signature                                      Date

# Tab 4


GAWKER MEDIA

# Contractor Details

Before rendering services for Gawker, independent contractors must complete this form and take the steps identified below. **All fields are required.**

| | |
|---|---|
| CONTRACTOR NAME: | Lily Newman |
| SITE NAME/DEPARTMENT: | Gizmodo / Tech |
| FULL ADDRESS: | 25 East 86 St. APT 12E |
| | New York, NY 10028 |
| TELEPHONE: | (917) 596-0189 |
| PERSONAL E-MAIL: | lilyhnewman@gmail.com |
| AIM/SKYPE/ETC: | haylil101 / lilyhnewman |

Contractors must complete and submit the following paperwork to be set up in our accounts payable system:

- **Independent Contractor Agreement (appears below):** Must be completed and signed by the Contractor. Any questions or issues should be addressed to your contact at Gawker.
- **W9 Form:** Contractors must complete this form in its entirety.
- **Paperless Payments:** This form must be completed to enable us to wire amounts payable directly to contractor's account. We'll also need a voided check or a letter from the applicable bank with contractor's routing and transit number. There are *no exceptions*. <u>**Contractors must sign this form**</u> or their paperwork will not be processed.

Upon completing this form, contractors should either a) mail or drop off this packet to the address below or b) fax it to us at +1 646 417 5893.

> Gawker Media
> Attn: Finance
> 210 Elizabeth Street, Fourth Floor
> New York, NY 10012

<u>**All of the above paperwork must be received by the 25th of the month**</u>, or contractor's pay will not be processed until the following month.

Once we receive and process the above paperwork, contractor will receive a confirming email. If contractor does not receive such an email from us within a few days of sending, feel free to email finance@gawker.com to check in.

**AGREEMENT between Gawker Media LLC ("Company") and its affiliated companies and Contractor**

Contractor agrees the following terms will apply for their work with Company.

1) **Intellectual Property.** Company owns all rights to any and all Intellectual Property created for Company, unless excluded by mutual agreement. All Intellectual Property must be returned to Company immediately upon termination of this Agreement.

   a) Any and all original content and materials provided by Company, developed or conceived by Contractor or sub-hires, employees or interns pursuant to and during the Term of this Agreement (collectively, the "Work") will be "works made for hire" and will be the exclusive property of Company. Contractor waives any claims to "moral rights" they might have in connection with the Work. If any Work is determined to not be a "work made for hire", Contractor, by entering into this Agreement, assigns to Company all right, title and interest in such Work in perpetuity in all media currently in existence or invented in the future, unless otherwise agreed in specific circumstances with the Publisher.



## Direct Deposit Enrollment Form

All employees and contractors must be paid through direct deposit. If you have any questions about this process, please email finance@gawker.com.

Name: Lily H. Newman
Site/Dept: Gizmodo
Date: 7/12/11      Social Security Number/EIN: ▓▓▓▓▓

```
|:012345678|: 123456789|" 0101
```

Routing/Transit # (A 9-digit number always between these two marks)

Checking Account #

Check # (this number matches the number in the upper right corner of the check— not needed for sign-up)

**You must attach a voided check for each checking account. Your form cannot be processed without it!**

**Bank Account #1**     (check one)  _X_ Checking   ___ Savings account
Bank Name: Bank of America
Routing/Transit #: 021000322   Account Number: ▓▓▓▓▓
I wish to deposit (check one) my _X_ entire net pay   ___ specific dollar amount: $_____

LILY H. NEWMAN   07-08                                  1007
25 E. 86TH ST. APT. 12E
NEW YORK, NY 10028-0553                          1-32/210 NY
                                                    94165
                                          _____ Date
Pay to the
Order of _____  $ _____
                                     _____ Dollars
Bank of America
ACH R/T 021000322
For _____

VOID

Signature: [signature]

| Form **W-9** <br> (Rev. January 2011) <br> Department of the Treasury <br> Internal Revenue Service | **Request for Taxpayer** <br> **Identification Number and Certification** | Give Form to the <br> requester. Do not <br> send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)
**Lily Hay Newman**

Business Name/disregarded entity name, if different from above

Check appropriate box for federal tax classification (required): ☒ Individual/sole proprietor ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ ............

☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)
**25 East 86 Street APT 12E**

City, state, and ZIP code
**New York, NY 10028**

Requester's name and address (optional)
Gawker Media
210 Elizabeth Street
New York, NY 10012

List account number(s) here (optional)

**Part I** Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
[redacted]

Employer identification number

**Part II** Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign Here  Signature of U.S. person ▶ *[signature]*   Date ▶ **7/12/11**

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Definition of a U.S. person. For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X                              Form **W-9** (Rev. 1-2011)

b) Intellectual Property includes, but is not limited to software (including modifications, upgrades or new versions), designs, icons, menus, trademarks, copyrights, patents, text, graphics, photographs, illustrations, audio, video and data.

c) Notwithstanding the foregoing, all content and materials created and used on Contractor's existing personal Web site, or reprinted from another source, shall remain the Intellectual property of Contractor.

2) **License.** In consideration of the fees payable to Contractor under this Agreement, and in light of Company's ownership of intellectual property as described above, there is an implied exclusive perpetual, transferable, worldwide license to Company for use of all content produced by Contractor for the Site, for use on the Site, the Internet and any commercial on-line service or similar service existing or invented in the future (On-Line Media), and in any media whether now or hereafter known, other than On-Line Media.

3) **Confidentiality.** Contractor acknowledges that Contractor may have access to proprietary information, materials and data of Company. Contractor agrees not to use or disclose proprietary information and to use your best efforts to ensure that all those to whom Contractor gives access to proprietary information do not use or disclose any of this information except to carry out Contractor's duties and responsibilities under this Agreement.

4) **Independent Contractor.** Contractor is an Independent Contractor, and has the sole right to determine the manner, means and method of performing the Services under this Agreement. All persons working for or with Contractor in performing contractor's obligations to Company under this Agreement will not be employees or contractors of Company or have any relationship with Company. Contractor will be solely responsible for all sub-hires, employees, interns and for all obligations to them and will indemnify Company against any and all judgments resulting from such obligations and for all costs, omissions or conduct of such persons. Contractor is responsible for whatever payments will be due to his/her employees or contractors and agrees to comply with all governmental obligations applicable to the performance of his/her obligation under this Agreement.

5) **No Waiver.** The failure of Company to enforce any term or condition of this Agreement will not be deemed a waiver of any terms or conditions of this Agreement.

6) **Survival.** The provisions of the paragraphs of this Agreement entitled License, Representations and Warranties, Confidentiality and Indemnification shall survive any termination of this Agreement.

7) **Arbitration.** Any controversy between Company and Independent Contractor or between any employee of Company and Independent Contractor, including, but not limited to, those involving the construction or application of any of the terms, provisions or conditions of this Agreement or otherwise arising out of or relating to this Agreement, shall be settled by arbitration in accordance with the current commercial arbitration rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be rendered by any court having jurisdiction thereof. Company shall bear the costs of the arbitrator but each party shall each bear their own costs and legal fees associated with the arbitration. In the result of judgment, the prevailing party shall be entitled to a recovery of its legal fees and costs incurred by the arbitration and the other party shall pay all such fees and costs, with the recoverable total of all fees and costs not to exceed the value of this Agreement. The location of the arbitration shall be in New York, New York.

8) **Governing Law.** This Agreement will be governed by the laws of the State of New York. The parties agree and consent to exclusive jurisdiction and venue in the State and Federal courts located in the City and County of New York, New York for any proceedings arising out of this Agreement.

9) **Severability.** If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

10) **Completeness of Terms.** The offer contained in this Agreement is made only on the terms and conditions set forth in this Agreement. By signing this Agreement, Contractor agrees to its terms and conditions as originally electronically transmitted to Contractor, and no modification of this Agreement by Contractor which is not specifically agreed to in writing by Company will be binding on Company or have any force of effect.

**ACCEPTED AND AGREED BY:**

*/s/ Lily M[signature]*

Date: 7/12/11

# Tab 5



GAWKER MEDIA

January 29, 2013

Kwame Opam
Via E-Mail

Dear Kwame,

I'm thrilled to offer you employment with Gawker Media LLC ("the Company"). The terms and conditions of your employment are set forth below in this Agreement and in the attached Appendices, which shall be deemed part of this Agreement (collectively, the "Employment Agreement").

I've also attached an overview of our robust benefits offering – everything from fully paid medical insurance to a sabbatical after four years. Please feel free to contact me should you have any specific questions.

In your new position as Tech Content Producer, Studio@Gawker, you will be responsible for, but are not limited to, creating and researching advertorial content in the technology vertical. You will report to Megan Gilbert, Senior Copywriter. Additional work duties and requirements may be requested of you from time to time.

This offer of employment is valid until February 1st, 2013.

A summary of the main terms of your employment is as follows:

- **SALARY.** You will receive an annualized salary in the gross amount of $44,000 (forty-four thousand dollars) paid twice a month, less all required withholding taxes and any other amounts required by law to be deducted or agreed by you to be withheld.

- **POTENTIAL DISCRETIONARY BONUS.** You are eligible for an annual bonus of up to $6,000. Whether or not you receive any bonus, the amount of any such bonus, and the timing of any such bonus will be at the complete discretion of your Manager/Company.

- **COMMENCEMENT DATE.** February 11th, 2013 (tentative).

- **BENEFITS.** You will be eligible for participation in the Company Group Health Insurance Plan (the "Plan"), subject to the terms and conditions of the Plan. The Plan is subject to change at any time, with or without notice.

- **PAID TIME OFF.** You will be entitled to paid time off as outlined in the Company Paid Time Off Policy, which is subject to change at any time, with or without notice.

- **COMPANY POLICY.** You agree to abide by the policies of the Company, as they apply to you now and as they may change in the future.

- **CONDITIONS OF OFFER.** This Offer is made only on the terms and conditions set forth. By accepting this Offer, you agree to the terms and conditions of this Employment Agreement as originally provided to you, electronically or in hard copy, and no modification of these terms and conditions by you which is not specifically agreed to in writing by the Company will be binding on the Company or have any force or effect. This offer of employment is also conditioned upon your signing of the Confidentiality, Covenants, and Inventions Assignment Agreement ("CCIAA") attached hereto as Appendix B and the Company's Anti-Harassment and Anti-Discrimination Policy, and submission of all required applicable employment related forms, as well as your eligibility to be employed legally in the United States.

- **EMPLOYMENT AT-WILL.** Your employment with the Company is on an "at-will" basis, is not guaranteed for any definite period of time, and may be terminated at any time by you or by the Company, for any reason or for no reason, subject to the following notice periods:

    o **Notice** - If you have been employed by the Company for less than three months, no advance notice of termination is required by either party. If you have passed your probationary period (3 months of continuous, full-time employment) and are terminated from the Company for any reason except poor job performance, misconduct, material breach of this Employment Agreement, or breach of the terms of the CCIAA attached hereto as Appendix B, you are eligible to receive two weeks notice (or pay in lieu of notice).

    During the notice period, you agree to use your best efforts to transition your responsibilities and knowledge to other Company personnel, as so directed by the Company. The Company also shall have the right to direct you to cease performing work for the Company, and/or to cease coming to the office, during such notice period.

    o **Eligibility for Severance** - To be eligible for severance you must have completed two years of continuous, full time permanent employment at the Company at the time your employment is terminated.

    o **Severance Pay** - You are eligible to receive one full week of pay per completed year of service. The maximum is 52 weeks. You must sign an agreement and release satisfactory to the Company to receive this pay.

- o **No Severance Pay** - You are not entitled to severance pay if you leave the Company under the following conditions: (1) Voluntary Resignation; (2) Discharge for Cause; (3) Disability covered by Worker's Compensation for NY State Disability Insurance; (4) for material breach by either party of this Employment Agreement, or for breach of the terms of the CCIAA attached hereto as Appendix B; or (5) Retirement.

- **ARBITRATION.** You agree that except as otherwise provided in this Employment Agreement or by law, any dispute arising between you on the one hand and the Company, any of its affiliates, and/or any of their respective officers, directors, or employees on the other hand, including but not limited to all claims arising under or relating to this Employment Agreement or any federal, state or local statute, regulation, or law (but excluding any claims for unemployment insurance or workers compensation benefits), will be submitted for resolution to binding arbitration before the American Arbitration Association ("AAA"), in accordance with the AAA Arbitration Rules for Employment Disputes. Such arbitration will be conducted in New York, New York, and the arbitrator will apply New York law, including federal law as applied in New York courts. The arbitration will be conducted by a single arbitrator, who will not have the authority to modify or change any of the terms of this Agreement. The parties agree that the arbitration will be conducted on a strictly confidential basis, and no party will disclose the existence or nature of any claim, any documents, exhibits, or information exchanged or presented in connection with any claim, or the ruling or result of any claim (collectively, "Arbitration Materials"), to any third party, with the sole exception of the parties' legal counsel (who will also be bound by these confidentiality terms). An action to enforce or vacate an arbitrator's award may be brought only in a court of competent jurisdiction in New York, New York. The parties agree to take all steps necessary to protect the confidentiality of the Arbitration Materials in connection with any such court proceeding, agree to file all documents containing Confidential Information, (as defined by Appendix B attached hereto) under seal, and agree to the entry of an appropriate protective order encompassing the confidentiality terms of this Agreement. Except as otherwise provided by law, the parties will bear their own respective costs (including attorneys' fees and costs) in connection with any such arbitration or litigation.

If you are prepared to accept this offer, please sign an original copy of this letter and return it to Greg Lopez, Gawker Media, 210 Elizabeth Street, Fourth Floor, New York NY 10012 on or before February 1st, 2013.

Please contact Greg Lopez at +1 646.214.7898 or by email lopez@gawker.com, if you have any questions or concerns. We look forward to working with you.

Sincerely,

*[signature]*

Scott Kidder
Executive Director of Operations
Gawker Media LLC


I accept the above-described position, as well as the terms and conditions outlined in this Employment Agreement (which includes Appendices A and B).

_____     1/30/13_____
(Employee Signature)                                    Date


I specifically acknowledge and agree that I am aware of my rate of pay, regular pay day and overtime rate of pay (if applicable) as required by Section 195 of the New York Labor Law.

_____     1/30/13_____
(Employee Signature)                                    Date

# Tab 6

CheckView                                                                                              7/14/15, 12:24 PM

## Check View - Rollup Totals

Name:   Newman, Lily

**Selected checks**

| Year/Week # | Pay Date | Period End | Gross | Net | Check Number | Co/File # |
|---|---|---|---|---|---|---|
| 2014 - 02 - 1 | 01/13/2014 | 01/01/2014 | 1,250.00 | 0.00 | 00020014 | 79H/001278 |
| 2013 - 50 - 1 | 12/12/2013 | 11/30/2013 | 1,000.00 | 0.00 | 00500016 | 79H/001278 |
| 2013 - 46 - 1 | 11/12/2013 | 10/31/2013 | 1,250.00 | 0.00 | 00460018 | 79H/001278 |
| 2013 - 37 - 2 | 09/13/2013 | 08/31/2013 | 1,000.00 | 0.00 | 00374002 | 79H/001278 |
| 2013 - 32 - 1 | 08/12/2013 | 07/31/2013 | 750.00 | 0.00 | 00320015 | 79H/001278 |
| 2013 - 28 - 1 | 07/12/2013 | 06/30/2013 | 1,050.00 | 0.00 | 00280019 | 79H/001278 |
| 2013 - 24 - 1 | 06/10/2013 | 05/31/2013 | 450.00 | 450.00 | 00001287 | 79H/001278 |
| 2013 - 24 - 1 | 06/10/2013 | 05/31/2013 | 600.00 | 0.00 | 00240017 | 79H/001278 |
| 2013 - 19 - 1 | 05/10/2013 | 04/30/2013 | 150.00 | 0.00 | 00190019 | 79H/001278 |
| 2013 - 15 - 1 | 04/11/2013 | 03/31/2013 | 600.00 | 0.00 | 00150019 | 79H/001278 |
| 2013 - 11 - 1 | 03/12/2013 | 02/28/2013 | 600.00 | 0.00 | 00110021 | 79H/001278 |
| 2013 - 07 - 1 | 02/13/2013 | 01/31/2013 | 250.00 | 0.00 | 00070019 | 79H/001278 |
| 2012 - 50 - 1 | 12/13/2012 | 11/30/2012 | 500.00 | 0.00 | 00500007 | 79H/001278 |
| 2012 - 06 - 1 | 02/10/2012 | 01/31/2012 | 200.00 | 0.00 | 00060007 | 79H/001278 |

**Earnings Statement Summary**

| **Earnings** | Code | Field # | Hours | Amount |
|---|---|---|---|---|
| Regular | | | | 9,650.00 |
| **Gross Pay** | | | | **9,650.00** |

| **Deductions** | Statutory | | | Amount |
|---|---|---|---|---|
| | Other | | | Amount |
| | X - Checking 1 | | | 9,200.00 |
| **Net Pay** | | | | **450.00** |

https://payexag.adp.com/eXperts/CheckViewRollupPrintDetail.do?hideCheckList=false&fromPersonPage=false        Page 1 of 2